SLIP OPINION

Cite as 2015 Ark. App. 301

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CV-14-1004

| | | |
|---|---|---|
| PEGGY JOYCE HINTON | | **Opinion Delivered** May 6, 2015 |
| | APPELLANT | |
| | | APPEAL FROM THE WASHINGTON COUNTY CIRCUIT COURT |
| V. | | [NO. PR-2014-0233-5] |
| | | HONORABLE BETH STOREY BRYAN, JUDGE |
| BETHANY CHRISTIAN SERVICES | | |
| | APPELLEE | AFFIRMED |

## PHILLIP T. WHITEAKER, Judge

The Washington County Circuit Court dismissed a petition filed by appellant Peggy Hinton to set aside a decree of adoption. On appeal, Peggy argues that the circuit court erred in finding that she lacked standing to challenge the adoption. We affirm.

I. *Facts and Procedural History*

Peggy is the mother of an adult daughter, Sheaquonda Hinton. In 2011, Peggy filed a petition in the Pulaski County Circuit Court seeking to be appointed guardian of Sheaquonda's person and estate, alleging that Sheaquonda had been diagnosed with paranoid schizophrenia and bipolar disorder and was unable to properly care for herself. An order for temporary guardianship was entered in April 2012, finding that Sheaquonda was "presumed incapacitated by reason that she is a person that is mentally incapacitated and said disabilities

have not been removed." In July 2012, the Pulaski County court issued a subsequent order that, although captioned "Order for Permanent Guardian," declared that Peggy "shall be allowed to serve as temporary guardian" for Sheaquonda.

In March 2014, Sheaquonda gave birth to a baby while she was incarcerated. Three days before giving birth, Sheaquonda, who was thirty-two years old at the time, had signed a consent to adoption. The baby was placed with Bethany Christian Services, and potential adoptive parents filed a petition for adoption in the Washington County Circuit Court shortly thereafter. The circuit court subsequently entered a decree of adoption, finding that Sheaquonda had relinquished her parental rights and consented to the adoption.

Several weeks later, Peggy filed a motion to set aside the decree of adoption, to which the adoptive parents responded. The adoptive parents subsequently filed a motion to dismiss Peggy's motion. The Washington County Circuit Court granted the motion to dismiss. Specifically, the court determined that the July 2012 order from Pulaski County only appointed Peggy as temporary guardian, not permanent guardian. The court noted that the order specifically used the phrase "temporary guardian," and, moreover, Peggy never obtained her letters of guardianship or filed any kind of accountings or inventories. The court accordingly found that, because there was no permanent guardianship, and the temporary guardianship had expired after ninety days pursuant to statute, Peggy lacked the legal standing necessary to intervene in the adoption matter.

II. *Standard of Review*

Our standard of review in this case is multi-tiered. We are reviewing the granting of a motion to dismiss a petition to set aside an adoption, based on the lack of standing of the party seeking to set the adoption aside. We review a circuit court's decision to grant a motion to dismiss for abuse of discretion. *Doe v. Weiss*, 2010 Ark. 150; *Passmore v. Hinchey*, 2010 Ark. App. 581, 379 S.W.3d 492. The question of standing, however, is a matter of law for this court to decide, and the appellate courts review questions of law de novo. *Ark. Hotels & Entertainment, Inc. v. Martin*, 2012 Ark. 325, 423 S.W.3d 49; *Farm Bur. Ins. Co. of Ark. v. Running M Farms, Inc.*, 366 Ark. 480, 237 S.W.3d 32 (2006). Our courts have held that an error of law in itself can constitute an abuse of discretion. *Ford Motor Co. v. Nuckolls*, 320 Ark. 15, 894 S.W.2d 897 (1995); *SMG 1054, Inc. v. Thompson*, 2014 Ark. App. 524, 443 S.W.3d 574. With these standards in mind, we turn to the arguments presented on appeal.

III. *Arguments*

On appeal, Peggy has two major arguments: first, noting Sheaquonda's mental-health issues, that the guardianship was necessary for Sheaquonda's well-being; and, second, that the trial court erred in finding that she lacked standing. In support of her second argument, she asserts that it was clearly the intent of the Pulaski County Circuit Court to appoint her as permanent guardian, contending that the use of the word "temporary" in the body of the order was merely a scrivener's error.

Regarding Peggy's first argument that the guardianship was necessary, we note that the Washington County court made no findings regarding the necessity or desirability of the

guardianship. Rather, as noted above, the circuit court found only that Peggy lacked standing to challenge the decree of adoption because no order appointing her as permanent guardian had ever been entered.[1] Since the necessity or desirability of the guardianship did not form a basis of the circuit court's decision, we find no merit to these arguments on appeal and do not discuss them further.

We then address Peggy's second argument—that the court erred in finding that she lacked standing—by examining the July 2012 order of guardianship itself. While the order was captioned "Order for Permanent Guardianship," a document will be tested by its substance, not its form, and its designation or title is not controlling. *White v. Mattingly*, 89 Ark. App. 55, 199 S.W.3d 724 (2004) (citing *Thomas v. McElroy*, 243 Ark. 465, 420 S.W.2d 530 (1967)). We therefore look to the substance of the July 2012 Pulaski County order, which made the following findings:

> 2. That Sheaquonda L. Hinton is presumed incapacitated[2] by reason that she is a person that is mentally incapacitated and said disabilities have not been removed.[3]
>
> 3. That there is presently no guardian of the person or estate of the above-named incapacitated person.

---

[1]The order specifically stated that the court "made no rulings on the other arguments addressed by either the petitioners or the respondents."

[2]Arkansas Code Annotated section 28-65-211 (Repl. 2012) provides that the court "shall require that the evidence of incapacity include the oral testimony or sworn written statement of one (1) or more qualified professionals, whose qualifications shall be set forth in their testimony or written statements." The Pulaski County order failed to reflect that Sheaquonda's incapacity had been established by the evidence required in this section.

[3]This language merely repeats language from the initial, temporary guardianship order.

4. That the above-named incapacitated person owns no real or personal property other than her personal effects. However, the incapacitated person does receive federal funding due to her disability.

5. That there is presently found to be no other guardian of the person or estate of the above-named incapacitated person.

6. That Petitioner, Peggy Hinton, . . . is related to or interested in the above-named incapacitated person by reason of being the incapacitated person's biological mother, and therefore is legally qualified to serve as guardian of the person and estate of the above-named incapacitated person. The Petitioner is not presently a guardian for any other person.

7. Petitioner shall be allowed to serve *as temporary guardian* of the above-named incapacitated person without the necessity of bond.

8. That the above-named incapacitated person may write to the court if she feels said guardianship is no longer necessary, specifying all reasons such would no longer be necessary.

(Emphasis added.)

According to Arkansas Code Annotated section 28-65-214(c) (Repl. 2012), a guardianship order "shall specify the nature of the guardianship and the amount of the bond to be given." Here, the order specifically states that the guardianship is temporary in nature. While Peggy argues that the use of the word "temporary" in the body of the order was nothing more than a typographical error, we cannot agree. A typographical or clerical error is defined as an error "resulting from a minor mistake or inadvertence, esp. in writing or copying something on the record, and not from judicial reasoning or determination. Among the boundless examples of clerical errors are omitting an appendix from a document; typing an incorrect number; mistranscribing a word; and failing to log a call." *Black's Law Dictionary* 622 (9th ed. 2009). The difference between "temporary" and "permanent" changes the entire

meaning of the order; it is not a "minor mistake." Moreover, our supreme court has defined a true clerical error as "essentially one that arises not from an exercise of the court's judicial discretion but from a mistake on the part of its officers (or perhaps someone else)." *Smith v. Rebsamen Med. Ctr., Inc.*, 2012 Ark. 441, 424 S.W.3d 876. Denominating a guardianship as temporary, rather than permanent, is certainly more in the nature of an exercise of judicial discretion than it is a mere "mistake."

We therefore conclude that the circuit court did not err in finding that Peggy was only a temporary guardian. Because a temporary guardianship expires after ninety days, *see* Ark. Code Ann. § 28-65-218(a)(1) (Repl. 2012), the circuit court did not err as a matter of law in concluding that Peggy lacked standing to challenge the adoption; as there was no error of law, the court did not abuse its discretion in granting the adoptive parents' motion to dismiss Peggy's petition.

Affirmed.

VIRDEN and GRUBER, JJ., agree.

*Satterfield Law Firm*, by: *Cynthia S. Moody*, for appellant.

*H. Keith Morrison*, for appellee.