Cite as 2021 Ark. App. 93

# ARKANSAS COURT OF APPEALS

DIVISION I

**No.** CV-20-594

| | |
|---|---|
| | **Opinion Delivered:** February 24, 2021 |
| BRANDI SCHULTZ | |
| APPELLANT | APPEAL FROM THE LONOKE COUNTY CIRCUIT COURT |
| V. | [NO. 43JV-17-130] |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILDREN | HONORABLE BARBARA ELMORE, JUDGE |
| APPELLEES | AFFIRMED |

## WAYMOND M. BROWN, Judge

Appellant Brandi Schultz appeals from the order of the Lonoke County Circuit Court terminating her parental rights to her children, E.S.1 (DOB: 06/13/2014) and E.S.2 (DOB: 06/06/2015). On appeal, appellant argues that the circuit court abused its discretion when it denied her motion for continuance at the termination hearing. We affirm.

On August 2, 2017, the Arkansas Department of Human Services ("DHS") filed a petition for dependency-neglect after a physical altercation occurred between Albert Schultz, appellant's husband, and E.M., appellant's oldest child.[1] Attached to the petition was the affidavit of the DHS caseworker, which stated that on July 12, the child-abuse hotline received a report alleging that Albert and E.M. had gotten into a dispute during the

---

[1]Albert Schultz is the biological father of E.S.1 and E.S.2; he relinquished his parental rights to both children and is not a party to this appeal.

family dinner resulting in Albert's striking E.M. in the lip with a closed fist. Upon contact, E.M. stated that his stepfather punched him in the lip because he was not eating dinner fast enough. Albert explained that when he told E.M. to hurry up, E.M. "got upset and then threw his plate on the table and stabbed his fork in the table." Albert then stated his "reflexes" caused him to punch E.M. in the lip.

Following the September 5, 2017 adjudication hearing, the children were adjudicated dependent-neglected for "failure to protect and Mr. Schultz physical abuse." Although the children remained in appellant's custody, DHS was ordered to visit appellant's home weekly. Additionally, appellant was ordered to attend parenting classes, demonstrate improved parenting, attend nutrient classes, attend both family and individual counseling, submit to random drug screens, remain drug free, submit to a hair-follicle test, undergo a forensic psychological evaluation, cooperate with DHS, maintain contact with DHS, and comply with the terms of the case plan.

The circuit court held multiple review hearings over the next seventeen months. At the February 12, 2019 review hearing, the children were removed from appellant's care. Following the seventy-two-hour hold, DHS filed a petition for ex parte emergency custody and dependency-neglect. An emergency order was entered on February 15 placing custody of the children with DHS and finding that the children are at substantial risk of serious harm as a result of neglect or parental unfitness due to appellant's emotional stability which seriously affects her ability to supervise, protect, and care for the children. A probable-cause order was entered on February 20 with the court finding that probable cause existed to continue the children in the custody of DHS. At the March 19 adjudication hearing, the

2

court found by stipulation of the parties that the children were dependent-neglected based on inadequate supervision. The goal of the case was set as reunification.

On November 15, the court entered an order suspending appellant's visitation to E.M. due to an altercation between appellant and E.M. Several more review hearings were held. At the December 3 review hearing, which appellant did not attend, the circuit court specifically noted that she was noncompliant with the case plan.

Following a permanency-planning hearing, the circuit court entered an order on February 18, 2020, finding that despite reasonable efforts by DHS, appellant failed to make significant measurable progress. The court changed the case goal from reunification to adoption and authorized DHS to file a petition to terminate parental rights as to E.S.1 and E.S.2 and to permanent guardianship for E.M. On February 25, DHS filed the termination petition. On March 12, the circuit court entered an order appointing a permanent guardian for E.M.

The termination-of-parental-rights hearing was originally scheduled to be held on May 1; however, due to a global pandemic, on March 11, 2020, the governor of Arkansas issued Executive Order 20-03 declaring a state of emergency in an effort to reduce the spread of COVID-19. Additionally, on March 26, 2020, the governor of Arkansas issued a directive banning public gatherings of more than ten people. Accordingly, the circuit court continued the case until May 15, 2020. DHS then moved for a continuance citing COVID-19 concerns, which the court granted. Albert Schultz requested a continuance on May 18. The following day, appellant also requested a continuance because she had not been served

the termination-of-parental-rights petition.  The termination hearing was continued to July 2.

At the termination hearing, following testimony from DHS adoption specialist Patricia Shavers and DHS family service worker Haley Cross, appellant's counsel requested a recess to speak with appellant.  The circuit court, noting appellant's late arrival to the hearing, granted the recess.[2]  When court reconvened approximately twenty-six minutes later, appellant's counsel stated that appellant was "trying to pull herself together, but she does not feel like she can proceed."  The circuit court responded, "Then she can stay outside the courtroom."  The court stated the following:

> That's fine.  We let [appellant's counsel] have an opportunity to talk to her client 'cause her client was 40 minutes late for a hearing that was supposed to start at nine o'clock.  She talked with her client.  There was a drug test.  I don't know if it was administered or not.  I know that we took a break so that that could be done also.  In the interim, [appellant] indicated to her attorney that she didn't feel like she could proceed today; is that correct?

Appellant's counsel responded in the affirmative.

The hearing continued with testimony from DHS family service worker Jennifer Brackenridge, Lonoke County DHS family service worker Keosha Adams, and Lonoke County DHS program assistant Phillip Vowell.  Following the ad litem's examination of Vowell, the following exchange occurred:

APPELLANT'S COUNSEL:  Your Honor, I'm going to ask that this be continued.  I really cannot defend my client without her assistance, and I'm informed by the bailiff that she's no longer in the building.

THE COURT:  Well, we know she's no longer at the end of the hallway.  We do know that she was here and that she could've

---

[2]DHS also requested that appellant submit to a drug screen during the recess.

4

participated and helped you today. And I can't see that this Court continuing it will make it where she will be here and assist you in the future, so therefore, I deny your motion.

APPELLANT'S COUNSEL:    I understand, Your Honor.

Appellant's counsel proceeded with cross-examination of Lonoke County DHS program assistant Phillip Vowell, and the hearing concluded with the testimony of CASA advocate Debbie Woods.

On July 20, 2020, the circuit court entered an order terminating appellant's parental rights to E.S.1 and E.S.2 on three statutory grounds: (1) failure to remedy,[3] (2) failure to provide significant material support and maintain meaningful contact,[4] and (3) subsequent factors.[5] The circuit court further found that termination was in the children's best interest considering both the likelihood of adoption and the risk of harm to the children if returned to appellant. She now appeals the termination order.

On appeal, appellant does not challenge the sufficiency of the evidence supporting the statutory grounds for termination of her parental rights or the circuit court's best interest findings. She argues only that the circuit court erred in denying her motion for continuance at the termination hearing.

---

[3]Ark. Code Ann. § 9–27–341(b)(3)(B)(i)*(a)* (Supp. 2019).

[4]Ark. Code Ann. § 9–27–341(b)((3)(B)(ii)*(a)*.

[5]Ark. Code Ann. § 9–27–341(b)(3)(B)(vii)*(a)*.

A motion for continuance should be granted only upon a showing of good cause.[6] We will not reverse a denial of a motion for a continuance absent an abuse of discretion amounting to a denial of justice.[7] To find an abuse of discretion, the circuit court must have acted improvidently and without due consideration.[8] Lack of diligence by the moving party is sufficient reason to deny a motion for continuance.[9] Additionally, we will not reverse absent a showing of prejudice from the denial of the motion for continuance.[10]

Appellant argues that the circuit court acted arbitrarily when, after granting prior continuances, it denied appellant's continuance request "when she was present on the day of the hearing but for unknown reasons had left partway through DHS's case." While there had been prior continuances ordered, appellant did not object to any those continuances. Notably, as aforementioned, several of the continuances were due to COVID-19 health-related concerns. Further, appellant benefited by the continuances, as she had more time to remedy her circumstances; however, the testimony at the hearing made clear that even with the extra time, appellant failed to do so. We find no abuse of discretion in the circuit court's

---

[6]*Butler v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 570, at 4.

[7]*Smith v. Ark. Dep't of Human Servs.*, 93 Ark. App. 395, 401, 219 S.W.3d 705, 708 (2005).

[8]*Wright v. Ark. Dep't of Human Servs.*, 2018 Ark. App. 503, 560 S.W.3d 827.

[9]*Smith*, 93 Ark. App. at 401, 219 S.W.3d at 708.

[10]*Martin v. Ark. Dep't of Human Servs.*, 2015 Ark. App. 407, at 4, 465 S.W.3d 881, 883–84.

denial of appellant's motion for continuance when she simply left the courthouse in the middle of the termination hearing for "unknown reasons."

When deciding whether to grant a continuance, the circuit court should consider the diligence of the movant, and we have held that a lack of diligence alone is sufficient to deny a continuance.[11]  In *Williams v. Arkansas Department of Human Services*,[12] appellant, Tina Williams, had been present earlier in the day but was no longer present when her termination–of–parental–rights hearing began.  In response to her absence, Williams's counsel moved for a continuance, which the circuit court denied.  On appeal, our court stated,

> In this case, the motion for continuance was not made until the beginning of the termination hearing, and the motion would not have been made but for Tina's decision to leave the courthouse despite her knowledge that the hearing would be held that day.  Based on the circumstances before the trial court, we conclude that it did not abuse its discretion in denying Tina's motion for continuance.

The facts in the present case are similar to those in *Williams*,[13] except here, appellant's motion for a continuance did not come at the beginning of the termination hearing; instead, the request came in the middle of the hearing after several witnesses had already testified. Not only was appellant aware that the termination hearing was to take place that day, she was fully cognizant that the hearing was underway when she chose to leave the courthouse.

---

[11]*Hill v. Ark. Dep't of Human Servs.*, 2013 Ark. App. 760.

[12]2019 Ark. App. 194, 575 S.W.3d 415.

[13]*Supra.*

7

Accordingly, we conclude that the circuit court did not abuse its discretion in denying appellant's motion for continuance.

Appellant also contends that she was prejudiced by the denial of her continuance motion because it deprived her of the opportunity to be present and defend against the termination petition and the allegations made against her. Relying on *Campbell v. Arkansas Department of Human Services*,[14] she asserts that the circuit court's discretion in deciding whether to grant or deny a continuance requires balancing the interest of all parties. Appellant argues that the circuit court's failure to perform the required "balancing test" amounts to reversible error. Her reliance on *Campbell* is misplaced. The balancing of interests referenced in *Campbell* has no application in the case at bar. It is applicable where parents have pending criminal charges that are related to the termination proceedings, and where the courts are tasked with balancing the protection of the parents' constitutional right against self-incrimination and effective representation with the protection of their parental rights.[15] Here, appellant had no pending criminal charges related to the termination proceedings.

Appellant was represented by counsel throughout the entire termination proceeding. Although appellant arrived forty minutes late for the hearing, she was present for part of the hearing, and then, without explanation, chose to leave the courthouse in the middle of testimony. Appellant does not challenge the sufficiency of the evidence supporting the statutory grounds for termination of her parental rights or the circuit court's best-interest

[14]2016 Ark. App. 146.

[15]*Id.*

8

findings. We conclude that appellant has failed in her burden to demonstrate prejudice from the denial of the continuance motion.

For the reasons stated herein, we find no abuse of discretion in the circuit court's denial of appellant's motion for continuance. Therefore, we affirm the order terminating her parental rights.

Affirmed.

ABRAMSON and KLAPPENBACH, JJ., agree.

*Jennifer Oyler Olson*, Arkansas Commission for Parent Counsel, for appellant.

*Andrew Firth*, Office of Chief Counsel, for appellee.

*Kimberly Boling Bibb*, attorney ad litem for minor children.